UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PRECISION PIPING AND ) | |
| MECHANICAL, INC., a/k/a PPMI ) | CASE NO. 17-70785-BHL-7A |
| CONSTRUCTION COMPANY (PPMI), ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| FIRST FEDERAL SAVINGS BANK, ) | Adversary Proceeding No. _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE HANOVER INSURANCE COMPANY and ) | |
| XYLEM WATER SOLUTIONS USA, INC. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT TO DETERMINE VALIDITY, PRIORITY, OR EXTENT
OF A LIEN AND OTHER INTEREST IN PROPERTY**

Plaintiff, First Federal Savings Bank (the "Bank"), by counsel, files its complaint to determine the validity, priority or extent of a lien as well as other interests in property against Defendants, The Hanover Insurance Company and Xylem Water Solutions USA, Inc., pursuant to Federal Rule of Bankruptcy Procedure 7001(2) and (9). In support of its complaint, the Bank alleges and requests relief as follows:

**I. JURISDICTION AND VENUE**

1. This is an adversary proceeding to determine the validity, priority or extent of a lien as well as other interests in property pursuant to Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O).

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) and (e).

4. Venue lies in this district pursuant to 28 U.S.C. § 1409.

## II. PARTIES

5. The Bank is a state-chartered commercial bank duly organized and validly existing under the laws of the State of Indiana whose principal place of business is located in Vanderburgh County, Indiana.

6. Defendant, The Hanover Insurance Company ("Hanover"), is believed to be a New Hampshire corporation with a principal place of business located at 440 Lincoln Street, Worcester, MA 01653.

7. Defendant, Xylem Water Solutions USA, Inc. ("Xylem"), is believed to be a Delaware corporation with a principal place of business located at 14125 S. Bridge Circle, Charlotte, NC 28273.

## III. FACTUAL BACKGROUND

8. Prior to its bankruptcy filing on August 2, 2017 (the "Petition Date"), the Debtor, Precision Piping and Mechanical, Inc. (the "Debtor"), provided mechanical, electrical and general construction services.

**A.    Loans to Debtor.**

9. The Bank made the following loans (collectively, the "Loans") to the Debtor and/or Scott P. Jones ("Jones") pursuant to the terms and conditions of certain Business Loan Agreements dated February 18, 2016, May 3, 2017 and May 19, 2017 (collectively, the "Loan Agreements"):

- Loan No. 2680014798 in the amount of $1,245,052.40 on February 18, 2016;
- Loan No. 2680014780 in the amount of $1,079,666.82 on February 18, 2016;
- Loan No. 2680014806 in the amount of $2,000,000.00 on May 3, 2017;

- Loan No. 2680015647 in the amount of $54,545.10 on May 19, 2017;
- Loan No. 2680015639 in the amount of $86,849.00 on May 19, 2017; and
- Loan No. 2680015621 in the amount of $76,241.00 on May 19, 2017.

The Loan Agreements are attached hereto as **Exhibits A-1 through A-6** and are incorporated herein by reference.

10. The Loans are evidenced by certain Promissory Notes dated February 18, 2016, May 3, 2017 and May 19, 2017 (collectively, the "Notes"). The Notes are attached hereto as **Exhibits B-1 through B-6** and are incorporated herein by reference. The Debtor guaranteed the indebtedness due and owing by Jones to the Bank pursuant to the terms of a Commercial Guaranty (the "Guaranty"). The Guaranty is attached hereto as **Exhibit C** and is incorporated herein by reference.

11. The Loans are secured by all of the Debtor's personal property including, but not limited to, accounts, equipment, inventory, and general intangibles (collectively, the "Assets"), as more specifically set forth in the Commercial Security Agreements executed by the Debtor on February 18, 2016, May 3, 2017 and May 19, 2017 (collectively, the "Security Agreements"). The Security Agreements are attached hereto as **Exhibits D-1 through D-6** and are incorporated herein by reference.

12. The Bank filed UCC-1 financing statements against the Debtor with respect to the Assets on February 18, 2016 and May 22, 2017 as Instrument Nos. 201600001251967, 201700004250223, 201700004250445 and 201700004250556 with the Indiana Secretary of State (collectively, the "Financing Statements"). The Financing Statements are attached hereto as **Exhibits E-1 through E-4** and are incorporated herein by reference. (Collectively, the Loan

Agreements, Notes, Guaranty, Security Agreements and Financing Statements shall be referred to herein as the "Loan Documents").

13. Although the Debtor's Assets also include about twenty-four (24) vehicles (collectively, the "Vehicles"), the Bank's lien was not noted on the certificates of title to the Vehicles prior to the Petition Date.

**B.    Default on Loans.**

14. The Debtor defaulted under the Loan Documents on or about July 21, 2017.

15. On July 31, 2017, the Debtor sold to DeBra-Kuempel Inc. certain of the Assets for a purchase price of $500,000 (the "Sale"). The proceeds from the Sale – with the exception of $30,000 paid into escrow for warranty claims – were paid to the Bank to be applied to the indebtedness due and owing under the Loan Documents.

16. As of August 22, 2017, the amount due by the Debtor to the Bank totals $2,571,732.31, which includes principal, interest and billed attorneys' fees but excludes unbilled attorneys' fees and other fees and costs that continue to be incurred.

17. At the same time as this adversary proceeding, the Bank is filing a motion for relief from stay and abandonment with respect to all of the Debtor's Assets remaining after the Sale, excluding the Vehicles.

**C.    Claims by Hanover.**

18. Hanover issued payment and performance bonds to the Debtor for certain of its construction jobs (collectively, the "Bonded Projects").

19. On August 1, 2017, Hanover delivered a letter to counsel for the Bank asserting a superior interest in all accounts, contract proceeds, materials and equipment relating to the Bonded

Projects. Hanover's letter is attached hereto as **Exhibit F** and is incorporated herein by reference. Hanover further demanded that the Bank advise the Debtor to release the equipment and materials, including a WEDECO ultraviolet disinfection equipment (the "UV Equipment"), to Hanover.

20. The Bank disputes Hanover's claim of priority in all accounts, contract proceeds, materials and equipment related to the Bonded Projects. Specifically, on August 14, 2017, counsel for the Bank delivered a letter to counsel for Hanover asserting the legal basis for its superior rights in all accounts and contract proceeds (junior only to Hanover's equitable subrogation rights to the extent Hanover pays contract completion costs), materials and equipment relating to the Bonded Projects, including the UV Equipment and the Vincennes Check (defined below). The Bank's letter is attached hereto as **Exhibit G** and is incorporated herein by reference.

21. To date, counsel for Hanover has not responded to the Bank's August 14, 2017 letter.

**(i) UV Equipment**

22. The UV Equipment was sold by Xylem to the Debtor pursuant to Purchase Order No. 155783 dated January 10, 2017 (the "Purchase Order"). The Purchase Order is attached hereto as **Exhibit H** and is incorporated herein by reference.

23. Pursuant to the Purchase Order, the payment terms were:

> 10% Net 30 days following approved submittals
> 80% Net 30 days following shipment
> 5% Net 30 days following install, not to exceed 150 days after shipment
> 5% Net 30 days following start-up, not to exceed 180 days after shipment

24. The purchase price included freight to the Max Roads WWTP jobsite located at 1201 Ewing Road, Owensboro, KY 42301 (the "Job Site") to be handled by Xylem. The Job Site

is a Bonded Project.

25. The Debtor paid 10% of the purchase price ($59,328) to Xylem on May 9, 2017. The Invoicing Plan / Payment Reconciliation is attached hereto as **Exhibit I** and is incorporated herein by reference.

26. On July 5, 2017, Xylem shipped the UV Equipment to the Job Site as required by the Purchase Order. The Packing List and Invoice are attached hereto as **Exhibits J and K** and are incorporated herein by reference.

27. The Debtor is in possession of the UV Equipment.

**(ii)   Vincennes Check**

28. Check No. 013097 in the amount of $122,323.29 was issued by Vincennes Water Utilities to the Debtor on July 21, 2017 (the "Vincennes Check") for one of the Bonded Projects. A copy of the Vincennes Check is attached hereto as **Exhibit L** and is incorporated herein by reference.

29. The Vincennes Check was approved by the general contractor and issued to the Debtor prior to any default by the Debtor on its contracts and prior to any performance by Hanover.

30. The Vincennes Check is being held by the Trustee in the Debtor's account at German American Bank.

**COUNT I:**
**DETERMINATION OF VALIDITY, PRIORITY, AND EXTENT OF LIEN IN**
**PROPERTY AND DEBTOR'S INTEREST IN PROPERTY (UV EQUIPMENT)**

31. The Bank incorporates the allegations in the preceding paragraphs as if fully set forth herein.

32. Under Indiana Code section 26-1-2-401(2), title passes to the buyer upon delivery.

33. Xylem delivered the UV Equipment to the Debtor under the terms and to the location agreed upon in the Purchase Order.

34. The Debtor is the owner of the UV Equipment.

35. Under Indiana law, the Bank's security interest in the UV Equipment attached upon delivery.

36. The Bank's interest in the UV Equipment is senior to any lien, claim or interest of Hanover or Xylem.

37. Xylem is named as a defendant in this adversary proceeding to asset any interest it may have in the UV Equipment.

WHEREFORE, the Bank respectfully requests that the Court enter a judgment determining and declaring that (a) the Debtor is the owner of the UV Equipment; (b) the Bank's security interest in the UV Equipment attached upon delivery of the UV Equipment to the Debtor; (c) the Bank's security interest in the UV Equipment is senior to any claim, lien or interest of Hanover or Xylem; and (d) granting all other just and appropriate relief.

## COUNT II
## DETERMINATION OF VALIDITY, PRIORITY, AND EXTENT OF LIEN IN PROPERTY (VINCENNES CHECK)

38. The Bank incorporates the allegations in the preceding paragraphs as if fully set forth herein.

39. The Bank concedes that Hanover has superior rights in the contract proceeds for the Bonded Projects to the extent authorized by the doctrine of equitable subrogation.

40. However, the doctrine of equitable subrogation does not extend to contract payments paid <u>before</u> the contractor defaults.

7

41. The Vincennes Check was approved by the general contractor and issued to the Debtor prior to any default by the Debtor on its contracts and prior to any performance by Hanover.

42. The Vincennes Check is an account receivable of the Debtor to which the Bank's security interest attaches and is superior to any interest of Hanover.

WHEREFORE, the Bank respectfully requests that the Court enter a judgment determining and declaring that (a) its interest in the Vincennes Check is superior to any right, claim or interest of Hanover; and (b) granting all other just and appropriate relief.

### COUNT III:
### DETERMINATION OF VALIDITY, PRIORITY, AND EXTENT OF LIEN IN PROPERTY
### (MATERIALS, SUPPLIES & EQUIPMENT)

43. The Bank incorporates the allegations in the preceding paragraphs as if fully set forth herein.

44. The Bank has a security interest in all materials, supplies and equipment of the Debtor, including those materials, supplies and equipment located on job sites for the Bonded Projects (collectively, the "Materials, Supplies and Equipment").

45. The Bank's interest in the Materials, Supplies and Equipment is senior to any lien, claim or interest of Hanover.

WHEREFORE, the Bank respectfully requests that the Court enter a judgment determining and declaring that (a) the Bank's security interest in the Materials, Supplies and Equipment is senior to any claim, lien or interest of Hanover; and (b) granting all other just and appropriate relief.

Respectfully Submitted,

*/s/ Whitney L. Mosby*
Whitney L. Mosby
Thomas C. Scherer
Bingham Greenebaum Doll LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
317-635-8900
Fax: 317-236-9907
Email: wmosby@bgdlegal.com
       tscherer@bgdlegal.com

-and-

Donald J. Fuchs
Bingham Greenebaum Doll LLP
One Main Street, Suite 600
Evansville, IN 47708
812-802-5809
Fax: (812) 437-6717
Email: DFuchs@bgdlegal.com

*Counsel for First Federal Savings Bank*

18681462